IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

T-MOBILE NORTHEAST LLC,
Plaintiff,

v.    Civil No. JFM-10-1037

FREDERICK COUNTY BOARD OF
APPEALS and
FREDERICK COUNTY BOARD OF
COUNTY COMMISSIONERS,
Defendant.

******

MEMORANDUM

Plaintiff T-Mobile Northeast LLC ("T-Mobile"), a wireless telecommunications service provider, applied to the Frederick County Board of Appeals ("the Board")[1] for a special use exception to install a cell tower in Frederick County, Maryland in order to close a gap in T-Mobile's service coverage. Following the Board's denial of the application, T-Mobile filed this action seeking an injunction directing the Board to grant its application, as well as any ancillary permits necessary to construct the cell site; and an award of costs, including attorney's fees, for violations of the Federal Communications Act, as amended, 47 U.S.C. § 332 (the "Communications Act") and Maryland law. Now pending is T-Mobile's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Upon review of the papers filed, this Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010). For the following reasons, T-Mobile's Motion for Summary Judgment will be granted.

---

[1] Defendant Frederick County Board of County Commissioners is the governing body of Frederick County, in accordance with Article XI-A of the Maryland Constitution. The Board of County Commissioners formed Defendant Frederick County Board of Appeals ("the Board"), pursuant to Section 1-19-2.150 of the Frederick County Code. The Board is responsible for conducting hearings on special exception applications, pursuant to Section 1-19-3.210 of the Frederick County Code. Where appropriate, the Defendants are referred to jointly as "the County."

# I.[2]

In order to remedy a gap in coverage identified through dropped-call data, customer complaints, and research analysis conducted by radio frequency engineers, T-Mobile designated a one-mile radius "search ring" inside of which a cell site would need to be located in Frederick County.[3] (Pl.'s Mem. 4.) T-Mobile identified one existing structure within the search ring upon which collocation of the cell site would be possible: an existing unipole installed by AT&T Wireless. (*Id.*) AT&T Wireless, however, would only permit T-Mobile to attach at 40 feet above ground level. (*Id.*) After T-Mobile's radio frequency engineer determined that 40 feet was too low to close the gap in coverage, T-Mobile made the decision to construct a new facility. (*Id.* 4-5.) T-Mobile identified 3857 South Mountain Road in Knoxville, Maryland (the "Property") as a suitable site for closing the gap in coverage. (*Id.* 5.)

The proposed cell site is a 150-foot stealth telecommunications unipole.[4] (*Id.*) The Property is zoned "A" (Agricultural), allowing for the construction of a new cell tower as a special exception under the Frederick County Code of Ordinances.[5] (*Id.* at 6.) Section 1-19-8.332 of the Zoning Ordinance details the necessary components of a successful special exception application, providing, in part:

> (B) All applications for a special exception shall include:
>     (1) Computer modeling information used in selecting the site;
>     (2) Listing of alternative sites considered and why not selected;
>     (3) Photographs of the existing conditions of the site and area;

---

[2] The facts are contained in the record that was before the Board and are undisputed.
[3] In order to provide reliable wireless service, T-Mobile installs a network of cell sites in a grid pattern resembling a honeycomb. (Pl.'s Mem. 4.) Coverage from the cell sites must overlap to avoid gaps in service. (*Id.*)
[4] The proposed cell site is described as "stealth" because all antennas will be completely enclosed within the unipole. (Pl.'s Mem. 5.) Additionally, the proposed unipole (or monopole) will be brown in order to blend into the surroundings, and all related equipment will be inside a wooden fenced compound surrounded by a 10-foot-wide landscaping buffer. (*Id.* 5-6.)
[5] The Property is also located within an area subject to the Rural Legacy Program, which allows landowners to sell or grant development rights to the State and/or County in order to protect rural areas from sprawl development. The Property itself, however, is not under a Rural Legacy easement. (*See* Pl.'s Mem. 5.)

> (4) Photo documentation that a balloon test has taken place at the proposed site location.

Frederick County Code, § 1-19-8.332(B). Additionally, §1-19-8.420.2 sets forth the design criteria that applies to all communication towers in the A District, providing, in part:

> (E) All applications for approval of communications towers shall include:
> (1) Justification from the applicant as to why the site was selected;
> (2) Propagation studies showing service area and system coverage in the county;
> (3) Photo simulations of the tower and site, including equipment areas at the base from at least 2 directions and from a distance of no more than 1 mile.

*Id.* § 1-19-8.420(E). T-Mobile's application supplied information regarding each criterion and the documents required by both § 1-19-8.332 and §1-19-8.420. (*See* Ex. A, Pl.'s Mem.; Pl.'s Mem. 7.)

On January 28, 2010, the Board held a public hearing on T-Mobile's application that was continued on February 1, 2010. (Pl.'s Mem. 7.) At the January 28, 2010 hearing, T-Mobile was permitted twenty minutes to present evidence in support of its application for a special exception. T-Mobile, represented by Gregory Rapisarda, introduced five witnesses with expertise as to T-Mobile's cell site location process, as well as general expertise in the areas of site acquisition, zoning, wireless project management, radio frequency engineering, wireless network design, site development, environmental science, and real estate values. (*Id.*; *see also* Ex. B, Pl.'s Mem. 3-5.) T-Mobile described the proposed facility, the need for more coverage in the area, and its method for identifying the Property as an ideal location for a cell site. (Pl.'s Mem. 8; *see also* Ex. B, Pl's Mem. 5-7.) T-Mobile also testified as to the stealth nature of the proposed unipole, as well as the photo simulations and the balloon tests T-Mobile conducted, demonstrating its efforts to minimize the visual impact of the proposed cell site. (Pl.'s Mem. 9; Ex. B, Pl.'s Mem. 8.) Additionally, T-Mobile submitted a petition signed by thirty-three community members

supporting the installation of the unipole. (Pl.'s Mem. 8; Ex. B, Pl.'s Mem. 8.) T-Mobile's expert witnesses testified that the unipole would not negatively affect property values (Ex. B, Pl.'s Mem. 9-13), and that the unipole would not negatively affect historic properties or the Appalachian Trail (*id.* 15-16). Several community members also spoke in favor of T-Mobile's application, citing concerns over their current cell phone reception and their inability to make phone calls in emergency situations. (*See id.* 17-18.)

In opposition to T-Mobile's application for a special exception, several community members and the Executive Director of Harper's Ferry Conservancy testified at the January 28, 2010 hearing. The community members spoke in general terms about their concerns over the impact a unipole would have on the rural character of the area and on the mountain views (*id.* 32-36) and gave their opinion that there were other locations more suitable to the placement of the unipole (*id.* 42-43). In addition, one community member in opposition presented the Board with an appraisal of his property, predicting that the T-Mobile proposed unipole would cause a decrease in his property value by ten percent. (*Id.* 40.) Another community member testified that he had used his T-Mobile cell phone to conduct several test calls from areas surrounding the proposed cell site and was able to receive strong signals and make successful calls. (*Id.* 38.) A third community member submitted to the Board a petition with over sixty signatures opposing the proposed location for the unipole. (*Id.* 36.) The Executive Director of Harper's Ferry Conservancy, Paul Rosa, testified as to the deficiencies he found in T-Mobile's application, including the unipole's incongruence with the county's comprehensive plan and T-Mobile's failure to consider more sites for the installation of the unipole. (*Id.* 21.) Mr. Rosa proposed specific alternative locations for the cell site (*id.* 22-23), although he was unaware of the zoning restrictions in those areas (*id.* 28), had not spoken with the private landowners about their

willingness to lease land to T-Mobile (*id.* 23; 27), and had not conducted radio frequency tests at these suggested alternative locations (*id.* 29).

T-Mobile was allowed five minutes to rebut the opposition testimony at the end of the January 28, 2010 hearing. Mr. Rapisarda proffered that T-Mobile's radio frequency engineer had determined that a unipole was needed within a one-mile ring in order to close a gap in coverage. (*Id.* 46.) He conceded that while a unipole cannot be hidden, T-Mobile had taken steps to make the unipole stealth and that the Property is an ideal location because of the deep set-back. (*Id.*) After Mr. Rapisarda's presentation, the record of the January 28, 2010 hearing was closed, and the hearing continued until February 1, 2010.

On February 1, 2010, the Board voted to deny T-Mobile's special exception application by a vote of 3-2. (Pl.'s Mem. 11.) The vote was in response to a Board member's motion that the Board "make a finding that on the evidence presented, there was insufficient evidence to satisfy the requirements of the Frederick County Code Section 1-19-8.332(b)(2) and Section 1-19-8.420.2(e)(1) which deal with the requirement to show efforts to locate alternate sites for the particular tower and to show justification why the site in particular was selected." (Ex. D, Pl.'s Mem. 25.) The Board issued its written Findings and Decision regarding the denial of the application on March 25, 2010. (Ex. E, Pl.'s Mem.) The Board summarized the testimony provided at the January 28, 2010 hearing and stated its reason for denying the application:

> The requirement that the Applicant include justification as to why the site was selected and that the Applicant provide a listing of alternative sites considered and why they were not selected is intended to elicit a meaningful effort to locate such towers in locations which will serve the needs of the Applicant while, at the same time, minimize the impact on surrounding properties. In light of the nature of the area ultimately selected by the Applicant in this case, and its location within, among others, a Rural Legacy area, this Board is of the view that more evidence was required to answer the inquiry as to what other sites were considered and why they were not selected.

5

(*Id.* 6.) The instant appeal followed.

## II.

T-Mobile claims that the Board's decision violates Section 332(c)(7)(B)(iii) of the Telecommunications Act ("TCA") because it is not supported by "substantial evidence." (Pl.'s Mem. 13). T-Mobile also claims that the Board violated Maryland law concerning special exceptions to zoning ordinances. The two claims merge because courts require that in order for a zoning board decision to satisfy the TCA's substantial evidence test, the challenged decision accord with applicable local zoning law. *See, e.g.*, *T-Mobile Cent., LLC v. Wyandotte County*, 546 F.3d 1299, 1307 (10th Cir. 2008); *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 723-724 (9th Cir. 2005); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 495 (2d Cir. 1999). In other words, if a zoning board's decision violates a state's zoning law, as a matter of law it is not supported by substantial evidence.[6]

The TCA, 47 U.S.C § 301 et seq., enacted by Congress in 1996, aims to reduce impediments imposed by local governments upon the installation of facilities for wireless communications, such as cell towers. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005). The TCA amended the Communications Act of 1934 to include §332(c)(7), which requires that local governments act on requests for authorization to locate wireless facilities

---

[6] Because I find that the Board's decision was not in accord with Maryland zoning law, I need not decide whether it otherwise was not supported by substantial evidence. I note, however, that although the TCA does not define the term "substantial evidence," the legislative history demonstrates Congress's intent that the term hold the same meaning as in administrative law. *See* H.R. Conf. Rep. No. 104-458, at 208 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 223 ("the phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions."). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *AT&T Wireless PCS v. City Council of Va. Beach*, 155 F.3d 423, 430 (4th Cir. 1998) (quoting *Universal Camera v. NLRB*, 340 U.S. 474, 488 (1951)). Significantly, "substantial evidence," while more than a scintilla, is also less than a preponderance. *Id.* (citing *NLRB v. Grand Canyon Mining Co.*, 116 F.3d 1039, 1044 (4th Cir. 1997)).

"within a reasonable period of time," § 332(c)(7)(B)(ii), and each decision denying such a request must "be in writing and supported by substantial evidence contained in a written record," § 332(c)(7)(B)(iii).

The Court of Appeals of Maryland has explained that "[t]he special exception use is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid." *Schultz v. Pritts*, 291 Md. 1, 11 (Md. 1981). Where the local legislature has determined that as part of its comprehensive plan certain uses are appropriate in a zone by way of special exception, the local legislature has, in effect, declared that such uses, if they satisfy the other specific requirements of the ordinance, promote the health, safety and general welfare of the community. *See Anderson v. Sawyer*, 23 Md. App. 612, 624 (Md. Ct. Spec. App. 1974). Importantly, though, "[a] special exception . . . is merely deemed prima facie compatible in a given zone. The special exception requires a case-by-case evaluation by an administrative zoning body or officer according to legislatively-defined standards. That case-by-case evaluation is what enables special exception uses to achieve some flexibility in an otherwise semi-rigid comprehensive legislative zoning scheme." *People's Counsel for Baltimore County v. Loyola College in Md.*, 956 A. 2d 166, 176 (Md. 2008).

With these background principles in mind, the Court of Appeals of Maryland has held that once a special exception applicant has introduced facts and documents that satisfy the specific criteria for a special exception set forth in the zoning ordinance, "the appropriate standard to be used in determining whether a requested special exception use . . . should be denied is whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those

7

inherently associated with such a special exception use irrespective of its location within the zone." *Schultz*, 291 Md. at 22-23.

The Board made no finding in this case that the granting of the special exception at the proposed location would have adverse effects that are not inherently associated with cell towers. Therefore, if T-Mobile satisfied the specific criteria set forth in the Frederick County Zoning Ordinance for obtaining a special exception[7], the Board's decision was not in accord with controlling Maryland law.

The County argues that T-Mobile's application did not satisfactorily respond to Section 1-19-8.332(B)(2), which requires a "[l]isting of alternative sites considered and why not selected." In response to this requirement T-Mobile's application stated, "T-Mobile considered the existing AT&T telecommunications flagpole located on Cemetery Circle in Knoxville. However, AT&T stated that they are not leasing additional space on the flagpole. No other sites were located." (Ex. A at 3, Pl.'s Mem.) Additionally, T-Mobile's response to Section 1-19-8.420.2(E), "[j]ustification from the applicant as to why the site was selected," was "[t]his site was selected only after an existing telecommunications flagpole could not accommodate T-Mobile antennas. Coverage is necessary in the area around Route 340/Jefferson National Pike,

---

[7] Again, the relevant requirements come from Section 1-19-8.332(B):
    (B) All applications for a special exception shall include:
        (1) Computer modeling information used in selecting the site;
        (2) Listing of alternative sites considered and why not selected;
        (3) Photographs of the existing conditions of the site and area;
        (4) Photo documentation that a balloon test has taken place at the proposed site location.
and Section 1-19-8.420.2(E):
    (E) All applications for approval of communications towers shall include:
        (1) Justification from the applicant as to why the site was selected;
        (2) Propagation studies showing service area and system coverage in the county;
        (3) Photo simulations of the tower and site, including equipment areas at the base from at least 2 directions and from a distance of no more than 1 mile.

South Mountain Road and the surrounding residential areas. T-Mobile's goal is to provide additional coverage and fill in gaps in coverage in this area." (Ex. A at 5, Pl.'s Mem.)

The Board found that T-Mobile's submission of its attempt to collocate on the AT&T tower only, without any information on attempts to find alternative sites for the unipole within the one mile search ring, was "inadequate." (Ex. E at 5, Pl.'s Mem.) The Board stated in its Findings and Decision, "[t]here was no specific evidence presented as to any effort made by the Applicant to locate other land, developed or otherwise, upon which the Applicant might at least negotiate with a landowner (as it did with the owners of the site for which it seeks the special exception) to acquire an easement or lease space on which to construct a tower." (*Id.*) The Board stated that the purpose behind Section 1-19-8.332(B) and Section 1-19-8.420.2(E) was "to elicit a meaningful effort to locate such towers in locations which will serve the needs of the Applicant while, at the same time, minimize the impact on surrounding properties." (*Id.* 6.) The Board concluded that "simply stating that the only existing structure in the area was inadequate, without any evidence that there was no other land which may have been available, and without more, fails to sustain Applicant's burden of either production or persuasion on this critical element." (*Id.*)

T-Mobile responds that the Board's decision imposes upon special exception applicants a requirement that does not exist in the Frederick County Code. (Pl.'s Mem. 24.) T-Mobile asserts that "[t]he Zoning Ordinance does not contain any requirement that the applicant list every potentially conceivable alternative site and demonstrate why each one of those hypothetical sites was inadequate. The Zoning Ordinance requires only that T-Mobile list the alternatives that it actually considered and why those were not selected, which T-Mobile unquestionably did." (*Id.*) Indeed, in its reply memorandum T-Mobile goes a step further, arguing that "[f]undamentally,

Section 1-19-8.332(B)(2) does not require that the applicant consider any alternatives. The applicant is required only to identify those alternative sites that were considered." (Pl.'s Reply Mem. 6.)

While T-Mobile's argument may seem extreme, it may well be correct. By its terms, Section 1-19-8.332 (B)(2) simply does not require an applicant to consider any alternatives at all. Of course, if an applicant does not consider any alternatives, this might be a factor that the Board could take into account in deciding whether to grant a special exception. If no suitable alternative has been considered, the Board – particularly if opponents to the granting of the special exception have presented evidence that an alternative site is available – might conclude that a special exception should not be granted because the special exception "at the particular site proposed would have . . . adverse effects above and beyond those inherently associated with such a special exception irrespective of its location within the zone." *Shultz*, 291 Md. at 22-23. Here, however, the opponents to the special exception sought by T-Mobile presented no evidence of a suitable alternative site, and the alternative that T-Mobile had considered self-evidently was a reasonable one. Under these circumstances Section 1-19-8.332 (B)(2) imposed no obligation upon T-Mobile to identify other potential sites and negotiate with the owners of those sites before seeking a special exception.

Accordingly, I find that T-Mobile did satisfy the criteria established by the Frederick County Zoning Ordinance for obtaining a special exception. Because it did so, in order for the Board to deny the special exception sought by T-Mobile, under *Shultz* the Board would have had to find that the installation of a cell tower on the proposed site had adverse effects not inherent in cell towers themselves. The lack of such a finding invalidated the Board's decision both under Maryland law and the TCA. Therefore, T-Mobile is entitled to the summary judgment it seeks.

A separate order effecting the ruling made in this memorandum is being entered herewith.

Date: December 30, 2010 /s/
J. Frederick Motz
United States District Judge